IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID WHYTE,                  \*

                           \*

            Plaintiff,           \*

                           \*

        vs.                    \*          Civil Action No. ADC-18-3498

                           \*

WELLS FARGO HOME MORTGAGE,      \*

                           \*

           Defendant.         \*

                           \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendant, Wells Fargo Home Mortgage ("Defendant"), moves this Court to dismiss the Complaint of David Whyte ("Plaintiff"), for violation of the Maryland Mortgage Fraud Protection Act ("MMFPA") (Count I), Breach of Contract (Count II), and Negligence (Count III) (the "Motion to Dismiss") (ECF No. 6). After considering the Motion to Dismiss and the responses thereto (ECF Nos. 10, 16), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Defendant's Motion to Dismiss.

### FACTUAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On or about February 25, 2014, Plaintiff refinanced a home mortgage for his primary residence with Wells Fargo. ECF No. 1-1 at 6, ¶ 3. In return for receiving a mortgage rate of 3.625%, Plaintiff was required to enroll in the Wells Fargo Preferred Payment Plan and open a checking account to allow automatic withdrawal of the monthly payment due on his mortgage. *Id.* ¶¶ 4–8. Initially the monthly payment was $4,505 per month and Plaintiff deposited $4,510.00 per month to cover the withdrawal. *Id.* ¶ 9.

Sometime prior to June 2017, Wells Fargo adjusted the escrow amount required for the mortgage payment which resulted in a new monthly payment of $4,595.39. *Id.* ¶ 10. The increase in the monthly amount due resulted in a shortfall of $85.39, and no withdrawal occurred. *Id.* ¶¶ 11–12. Wells Fargo did not auto-draft any payments on Plaintiff's mortgage from June 2017 through December 2017. *Id.* ¶¶ 12–13. Plaintiff states he never received any notice of the non-payment until a foreclosure action was instituted by Wells Fargo on December 4, 2017. *Id.* ¶¶ 15–17. Plaintiff then contacted Defendant and was permitted to pay all outstanding arrears and Defendant dismissed the foreclosure action. *Id.* ¶¶ 18–19. Plaintiff alleges that Defendant reported Plaintiff's mortgage late to credit bureaus as well as the foreclosure action. *Id.* ¶ 20.

## PROCEDURAL BACKGROUND

The original complaint was filed in the Circuit Court for Howard County, and removed by Defendant on November 13, 2018 (ECF No. 1). The parties consented to a Magistrate Judge for all proceedings, and the case was referred to me on December 19, 2018 (ECF No. 11). The Motion to Dismiss and Responses were filed accordingly (ECF Nos. 6, 10, 16). This matter is now fully briefed and the Court has reviewed Defendant's Motion to Dismiss, as well as the responses thereto. For the following reasons, Defendant's Motion to Dismiss is GRANTED.

## STANDARD OF REVIEW

### Standard for Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## DISCUSSION

Plaintiff argues that Defendant violated the MMFPA by engaging in mortgage fraud because it knowingly failed to disclose to Whyte that if there was ever a shortfall in his Wells Fargo Account, the auto-draft would be terminated and Wells Fargo would not auto-draft any future payments even if there were sufficient funds to pay the mortgage due that month. ECF No. 10 at 5–7. In like terms, Plaintiff alleges Defendant committed a breach of contract because it agreed to auto-draft payments if there were sufficient funds to make a monthly mortgage payment and did not provide that if a payment is missed the auto-draft would be canceled. *See id.* at 7–9. In Count III, Plaintiff alleges that Wells Fargo was negligent because Wells Fargo owed a duty to Plaintiff to properly manage his preferred payment plan and breached that duty by failing to auto-draft funds. ECF No. 1-1 at 12, ¶¶ 31–34.

**Violation of MMFPA (Count I)**

More simply stated, what Plaintiff is alleging factually is that he did not have sufficient funds to pay June 2017, but by the next month since he deposited $4,505 in June and $4,505 in July, he had a total of $9,010 in his account, so Defendant, under the Preferred Payment Plan, had sufficient funds to withdraw either June's payment (late) in July or July's payment in July, since his monthly amount was increased to $4,595.39. Plaintiff further alleges in his complaint that although he may have missed one month (June), the excess $4,505 he deposited in June would have extended the funds sufficiently to cover the $4,595.39 payments due from July through December 2017. ECF No. 1-1, ¶ 13.

In order to evaluate Plaintiff's allegations, the Court necessarily turns to the language of the contract between the parties, the "Preferred Payment Plan" (ECF No. 6-3).

In Maryland, when interpreting a contract, courts "seek to ascertain and effectuate the intention of the contracting parties." *Phoenix Servs. Ltd. P'ship v. Johns Hopkins Hosp.*, 167 Md.App. 327, 391 (2006). In ascertaining the parties' intent, Maryland adheres to the objective theory of contract interpretation. *See Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51 (2013). The objective theory of contract interpretation requires that a court

> must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

4

*Myers v. Kayhoe*, 391 Md. 188, 198 (2006) (quoting *Dennis v. Fire & Police Emps.' Ret. Sys.*, 390 Md. 639, 656–57 (2006)).

The process for determining the intent of the contracting parties is well established in Maryland. First, a court must ascertain whether the agreement is ambiguous. Language in a contract "may be ambiguous if it is 'general' and may suggest two meanings to a reasonably prudent layperson." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985). However, this Court has acknowledged that a contract is not ambiguous merely because the parties disagree as to its meaning. *See Fultz v. Shaffer*, 111 Md.App. 278, 299 (1996). Contracts are interpreted as a whole, and all disputed terms are to be interpreted in context. *See Phoenix Servs.*, 167 Md.App. at 392–93. A court's next step depends on whether it finds that the contract is ambiguous or unambiguous.

If it finds that a contract is unambiguous, then it must only look to the language of the contract to determine the intent of the parties. *See id.* at 392. A court must presume that the terms expressed in the agreement are what the parties intended, regardless of what the parties may have meant, but did not state in the contract. *Id.* When contract language is clear and unambiguous, there is no room for construction and courts may not consider what the parties thought the agreement meant. *See Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985); *see also Phoenix Servs.*, 167 Md.App. at 392. If, on the other hand, a court finds that the contract is ambiguous, it must follow the second alternative, which is considering parol and/or extrinsic evidence to determine the parties' intent when the contract was made. *Phoenix Servs.*, 167 Md.App. at 393. It is noted that Plaintiff does not argue that the contract is ambiguous, eliminating the need for parol or extrinsic evidence. Plaintiff avers that the Defendant's conduct

is fraudulent because it failed to state terms that explain the auto-draft would terminate upon a default.

The Preferred Payment Plan ("PPP") is set forth in ECF No. 6-3. The Court does not find that there is any ambiguity in the language, therefore the Court looks to the language of the contract to determine the intent of the parties. *Phoenix Servs.*, 167 Md.App. at 392. The pertinent parts of the PPP are set forth below.

> Monthly: Your monthly payment amount will be withdrawn on your due date (usually the 1st day of every month) or up to 4 days after your due date. The withdrawal amount will equal the total monthly payment due, including principal, interest, applicable tax and Insurance payments.
>
> Preferred Payment Plan Terms and Conditions
>
> - I authorize Wells Fargo, its authorized representatives and service providers to initiate electronic withdrawals from my designated account to make monthly payments on my mortgage.
>
> - I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
>
> - I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of monthly payments, when payments are due, the applications of payments, the assessment of late charges or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my monthly payment.
>
> - I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full monthly payment to be made.
>
> - I understand the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
>
> - I understand that I must provide Wells Fargo notice of at least 10 days for any requests to modify, change or terminate participation in this program. I understand that if I modify, change, or terminate participation in the program, I may not realize the benefits.
>
> - I agree to be bound by the program's Terms and Conditions, which are stated here and online.

ECF No. 6-3 at 2.

The PPP unambiguously states that the withdrawal amount of the monthly payment will equal *the total monthly payment due*. In July 2017, the total monthly payment due was not $4,505 or $4,589.39. The total monthly payment due in July 2017 was at least $9,178.78 (not including a late fee for June's missing payment) since it consisted of June's payment of $4,589.39 and July's payment of $4,589.39. Plaintiff admits he only deposited $4,505 for each month, *see* ECF No. 1-1 at 7–8, ¶¶ 9–11, so even if Defendant had not terminated the auto-withdrawal, there remained insufficient funds not only for July but for every month that followed through December 2017. The terms and conditions included above state: "I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full monthly payment to be made." ECF No. 6-3 at 2. In this case, there was never sufficient funds on deposit from June 2017 until December 2017. Plaintiff's assertion that the PPP states that an auto-draft would occur "whenever there were sufficient funds to *cover a single payment*" misconstrues the language of the contract. ECF No. 10 at 5 (emphasis in original). The language "single payment" does not exist in the contract.

The fraud Plaintiff alleges in order to meet the elements of a violation of the MMFPA consists of Defendant's knowing failure to disclose to Plaintiff that if there was ever a shortfall in his Wells Fargo Account, the auto-draft would be terminated and Wells Fargo would not auto-draft any future payments even if there were sufficient funds to pay the mortgage due that month. Plaintiff here fails to read the plain language of the contract. Even if Defendant did knowingly terminate the auto-draft, Plaintiff agreed to the terms and conditions that stated that withdrawn funds would not be applied to his mortgage until sufficient funds have accumulated for the total monthly amount due. By Plaintiff's own admissions, he never had sufficient funds from June 2017

7

through December 2017. Under the terms and conditions of the contract, Plaintiff agreed that Defendant would not auto-draft his account until sufficient funds were on deposit. Plaintiff also never submitted any evidence to support that Defendant actually *terminated* the auto-draft. In fact, the evidence clearly shows that under the contract, it was Plaintiff who prevented the auto-draft by having insufficient funds in the account. It was Plaintiff's breach of contract that resulted in the termination of the auto-draft from June through December 2017.

There being no ambiguity in the language of the contract, "there is no room for construction, and a court must presume that the parties meant what they expressed." *Gen. Motors Acceptance Corp.*, 303 Md. at 261. On its face, Count I of the Complaint fails to allege sufficient facts to survive a motion to dismiss. A complaint cannot suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. Even accepting all the alleged facts as true, the Motion to Dismiss is GRANTED as to Count I.

### Breach of Contract (Count II)

In Count II, breach of contract, Plaintiff alleges Defendant breached the agreement by not auto-drafting his payments. ECF No. 1-1 at 11–12, ¶¶ 26–30. As stated above, the contract language was not ambiguous. A plain reading of the language stated that Defendant would auto-draft the monthly payments so long as Plaintiff had sufficient funds available in his account to pay the monthly payment that was due. Plaintiff, by his own admission, failed to provide sufficient funds in his account once his mortgage amount was increased from $4,505 per month to $4,589.39 per month (June–December 2017). ECF No. 1-1 at 7–8, ¶¶ 9–11; ECF No. 10 at 4. It was Plaintiff who breached the agreement. There is no evidence that Defendant terminated the auto-draft and

even if Defendant did automatically terminate the auto-draft, it was the direct result of Plaintiff's failure to provide sufficient funds. There is no language in the contract that states that Defendant is obligated to auto-draft any amount other than, or less than, what is due. For the reasons stated above, the Motion to Dismiss Count II of the Complaint is GRANTED.

### Negligence (Count III)

Plaintiff did not respond to the Motion to Dismiss Count III. *See* ECF No. 10. It is clear however, that Defendant is correct. Maryland does not recognize a cause of action for negligence arising solely from a contractual relationship between two parties. *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293–94 (4th Cir. 2002) (citing *Heckrotte v. Riddle*, 224 Md. 591 (1961)). There being no allegations that would provide an exception to this rule, the Motion to Dismiss as to Count III is GRANTED.

In conclusion, for the reasons stated herein, Defendant's Motion to Dismiss is GRANTED as to Counts I, II and III. A separate order will follow.

Date: 10 January 2019

A. David Copperthite
United States Magistrate Judge